# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**GREGORY MEANS**          \* **CIVIL NO. 6:15-0096**

**VERSUS**          \* **MAGISTRATE JUDGE HANNA**

**LESTER JOSEPH "JOEY" DUREL,**    \* **BY CONSENT OF THE PARTIES**
**JR. , ET AL**.

## REASONS FOR RULING

Pending before the Court is the Motion to Dismiss filed by Lester Joseph "Joey" Durel ("Durel"), the sole remaining defendant in this lawsuit, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [rec. doc. 24].  Plaintiff Gregory Means ("Means") has filed Opposition, to which Durel has filed a Reply. [rec. docs. 28 and 31].  Oral argument on the Motion was held on January 26, 2016, and the motion was taken under advisement.

For those reasons stated at the hearing of the motion, and for those set out below, the Motion to Dismiss is **granted in part and denied in part.** Accordingly, plaintiff's federal Eighth Amendment inadequate medical care claim against Durel and his claims for punitive damages under both federal and state law are **dismissed with prejudice.**  Plaintiff will be granted until March 18, 2016 to file an Amended Complaint setting forth additional facts in support of his federal Eighth Amendment unconstitutional prison conditions claim against Durel. The trial set for April 18, 2016 will be continued without date.

## BACKGROUND

Plaintiff filed the instant civil rights lawsuit against two defendants, former Lafayette Parish Sheriff Michael W. Neustrom ("Neustrom") and former Lafayette City-Parish Consolidated Government President Lester Joseph "Joey" Durel pursuant to 42 U.S.C. § 1983. [rec. doc. 1, ¶ 1 ].  The plaintiff has not named the Lafayette City-Parish Consolidated Government.

Plaintiff alleges that he was incarcerated at the Lafayette Parish Correctional Center ("LPCC"), "operated under the auspices of the Lafayette Parish Sheriff." [*Id*. at  ¶ 6,7, 11, and14]. On January 19, 2014, Deputy Smith entered into cell 3E-10 and "removed a large towel from the floor which was being used to soak up water coming into the cell from leaking water pipes." [*Id*. at  ¶ 11].  When Means advised Deputy Smith that the towels in the cell were being used to minimize the hazard in the cell by soaking up water . . . she became angry and . . . locked him in cell 3E-10." [*Id*. at  ¶ 13].  On January 20, 2014, Means woke during the night and "began walking in the cell at which time he slipped in a puddle of water leaking from the plumbing and fell onto the concrete floor, injuring himself." [*Id*. at  ¶ 14]. He was later transported to a local hospital for treatment. [*Id*. at  ¶ 15].  Means' requested prescription medication and additional diagnostic testing, but was not provided either.  [*Id.* at  ¶ 16].

2

In his introductory paragraph and caption of the lawsuit, plaintiff names both Durel and Neustrom solely in their official capacities.  In his fourth paragraph, however, he names Durel "individually and in his capacity as the duly elected City-Parish President . . . and the operator of the Lafayette Parish Correctional Center." [*Id*. at  ¶ 4].

The sole allegations which may be construed as asserting an individual capacity claim against Durel appear in paragraph 8, where the plaintiff alleges that both Neustrom and Durel "knew or should have known of failing plumbing in the deteriorating building." [*Id*. at  ¶ 8].   The remainder of the factual allegations appear to be directed at Neustrom as they refer to jail  "staff" and a particular deputy sheriff, Deputy Smith, [¶ ¶  9-14] and refer to requests for additional medical care, presumably made to jail personnel [¶ 16], all of whom are Neustrom's employees, for whom plaintiff alleges Neustrom is responsible [¶ ¶ 2, 25]. Nevertheless, these allegations are addressed below.

With respect to official capacity liability, Means alleges that Neustrom and Durel "jointly and in solido devised, adopted, implemented and carried out a custom, practice, or policy or policies and/or procedures" which included, in pertinent part, operating an under and inadequately staffed facility with maintenance and plumbing deficiencies which led to hazardous conditions in the

living units [¶ 17(a)-(c)], creating and failing to discover a hazardous condition caused by water leaking in the cells and failing to warn of the hazardous condition which defendants knew of or should have known of had they exercised reasonable care [¶ 17(f)-(h) and (l)], failing to exercise reasonable care and failing to fix the hazardous condition caused by the water leaking in the cells [¶ 17(i)], failing to keep the jail in a reasonably safe condition [¶ 17(k)]. Means alleges that these omissions were "deliberately indifferent in that it was obvious that the likely consequences of adopting a policy or policies and/or procedures was/were a deprivation of . . . Means' constitutional rights, resulting in his injuries. . . . ." [¶ 19].  "In the alternative, Means alleges that the defendants "devised, adopted, implemented and/or carried out a custom of [sic] policy or policies and/or procedures which caused the defendants to retain hazardous conditions in the correctional facility cell that was the cause of injury to Gregory Means. . . ." [¶ 19].

Again, although plaintiff's pleadings are imprecise, the majority of the remaining allegations appear to be lodged against former Sheriff Neustrom for his negligent retention of staff [¶ 17(d)], failure of his staff to conduct rounds to check on inmates [¶ 17(m)], failure to train, supervise and monitor deputies to identify inmate medical needs, failure to allow medical treatment, and allowing non-

4

medical staff to make medical decisions and acting in deliberate indifference to the serious medical needs of the plaintiff [¶ 17(e) and (n)-(p)].  Means further alleges that "the defendants", presumably Neustrom, failed to adopt a policy regarding medical procedures to ensure the safety and well being of inmates like Means [ ¶ 18] and deprived "Means of reasonable medical care . . . ,  same being deliberately indifferent in that it was obvious that the likely consequences was/were a deprivation of . . .Means' constitutional rights." [¶ 19]. These allegations will, however, be addressed below.

Based on these factual allegations, Means sets forth a federal cause of action pursuant to 42 U.S.C. § 1983 presumably based on the Eighth Amendment to the United States Constitution for inadequate medical care and unconstitutional prison conditions[1], as well as causes of action based on Louisiana state law.[2] [rec. doc. 25, ¶ 1].

Means seeks both compensatory and punitive damages for an unspecified injury, as well as an award of attorney fees presumably pursuant to 42 U.S.C. §

---

[1]The Eighth Amendment applies to convicted inmates while the Fourteenth Amendment Due Process Clause applies to pre-trial detainees. *Hare v. City of Corinth,* 74 F.3d 633, 639 (5th Cir. 1996). While Means cites both the Eighth and Fourteenth Amendments in his introductory paragraph, in response to the instant Motion, as was the case with respect to plaintiff's opposition to Neustrom's prior Motion to Dismiss, Means cites Eighth Amendment jurisprudence. Accordingly, the Court presumes that Means was not a pre-trial detainee at the time of the alleged incident.

[2]Means alleges causes of action under Louisiana Civil Code articles 2315 (negligence), 2322 (respondeat superior liability on the part of Neustrom) and 2317.1 (strict liability). [¶ 23-25].

5

1988.  [*See* Prayer for Relief;  ¶¶  14 and 15].

Based on these allegations, the district court previously granted Neustrom's Motion to Dismiss and accordingly, Means' federal § 1983 claims against Neustrom were dismissed with prejudice. [rec. doc. 11]. In so doing, the district court Haik held that Means' allegations of a "pipe leak", although an inconvenience and requiring repair, did not rise to the level of a constitutional violation. The district court additionally held that Means had not demonstrated deliberate indifference to his medical needs, given that Means had been transported to the hospital for treatment, had not alleged that additional diagnostic testing or medication was prescribed by hospital physicians and had failed to allege that he suffered any substantial harm as a result of the alleged inadequate treatment. Further, although Means may not have been fully satisfied by the treatment he received, the district court found that Means' dissatisfaction does not amount to deliberate indifference. Finally, the district court found that punitive damages were not available against Neustrom in his official capacity or under state law. [rec. doc. 11].  Although requested, the district court did not allow Means an opportunity to amend his complaint before dismissing Means' claims against Neustrom.  Thereafter, the parties consented to the exercise of this Court's jurisdiction by the undersigned.

6

By this Motion to Dismiss, Durel contends that Means' claims against Durel should be dismissed pursuant to FRCP 12(b)(6) because Means has failed to state a § 1983 claim against Durel upon which relief may granted because: (1) the Sheriff is responsible for the operation of the LPCC, including the upkeep of the jail and the provision of medical care to inmates, (2) Means has failed to demonstrate that he suffered a Constitutional deprivation as his claims are for ordinary negligence, and (3) Means has failed to state a valid municipal liability claim, and (4) Means has no viable claim for punitive damages against Durel. Durel additionally argues that there is no basis for this Court to retain jurisdiction over Means' remaining Louisiana state law claims.

## Rule 12(b)(6) Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); F.R.C.P. 12(b)(6).  Moreover, it is proper to consider documents that a defendant attaches to a motion to dismiss, if such documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim, as they form part of the pleadings. *Id*. at 498-499  Further, in deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. *Cinel*

*v. Connick*, 15 F.3d 1338, 1343 fn. 6 (5th Cir. 1994).  Finally, a court may consider matters of which they may take judicial notice.  *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) *citing  Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir.1996).   "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). [3]

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) *quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  In other words, a motion to dismiss an action for

---

[3]In this case, Means cites a newspaper article in opposition to the grant of this Motion which is not attached to, or referred to, in his Complaint, and which may not be properly be considered as a matter of public record.  Further, the Court cannot take judicial notice of the facts contained in the article inasmuch as the article is not necessarily "indisputable" nor does the article state facts whose accuracy could not be reasonably questioned.  Accordingly, the Court will not consider the article and the instant Motion has not been converted to a Motion for Summary Judgment.

failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming,* 281 F.3d at 161-162 *quoting Tel-Phonic Servs., Inc. v. TBS Int'l, Inc*., 975 F.2d 1134, 1137 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"A claim for relief is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc*., 634 F.3d at 796 *quoting Iqbal*, 129 S.Ct. at 1949;  *Coleman v. Sweetin*, 745 F.3d 756, 764 (5th Cir. 2014).   This includes the basic requirement that the facts plausibly establish each required element for each legal claim. *Coleman*, 745 F.3d at 763 *citing Iqbal*, 129 S.Ct. at 1949 and *Twombly,* 550 U.S. at 557. However, a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.* at 763-764  *quoting Iqbal*, 556 U.S. at 678

*quoting Twombly*, 550 U.S. at 555.

The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly,* 550 U.S. at 556. "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly*, 550 U.S. at 555; *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013). Thus, "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombley,* 127 S.Ct. at 1965 *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004); *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 at fn. 27 (5th Cir. 2009).  If a plaintiff fails to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombley,* 127 S.Ct. at 1974; *Malik v. Continental Airlines, Inc*., 305 Fed. Appx. 165, 167 (5th Cir. 2008); *Mitchell v. Johnson*, 2008 WL 3244283, *2 (5th Cir. 2008).

## LAW AND ANALYSIS

### I.  Individual Capacity Claims asserted under § 1983

To state a cause of action under § 1983, the plaintiffs must allege two elements: first, that the plaintiff was deprived of a right or interest secured by the Constitution and laws of the United States and, second, that the deprivation occurred by someone acting under the color of state law.  *Lauderdale v. Texas*

*Dept. of Criminal Justice,* 512 F.3d 157, 165 (5th Cir. 2007) *citing Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994); *Cornish v. Correctional Services Corp.,* 402 F.3d 545, 549 (5th Cir. 2005) *citing West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *See also Villanueva v. McInnis*, 723 F.2d 414, 418-419 (5th Cir. 1984) (requiring an actual deprivation of a constitutional right, not the threat of a deprivation or a conspiracy to deprive in the absence of an actual constitutional deprivation).

"Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

**Eight Amendment Inadequate Medical Care Claim**

For the reasons which follow, Durel cannot be held individually liable for Means' Eighth Amendment inadequate medical care claim.

Means complains that he was denied appropriate medical care after falling in his cell.  As noted above, although it appears that Means' allegations regarding his inadequate medical care claim are directed at Neustrom, which claim has already dismissed by the district court, to the extent that Means is attempting to

11

assert an Eighth Amendment claim for denial or inadequate medical care claim against Durel, Means' allegations will be considered briefly.

The constitutional right of a convicted prisoner to prompt and adequate medical care is also based upon the Eighth Amendment's prohibition of cruel and unusual punishment.  As in the conditions of confinement claim, in order to establish an actionable violation of the Eighth Amendment,  the prisoner plaintiff must allege facts tending to establish that the named defendants were deliberately indifferent to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The plaintiff must allege and be able to prove that each named defendant has been deliberately indifferent to his serious medical needs or the claim is subject to dismissal.  *Benjamin v. Neustrom,* 2010 WL 582735, *4 (W.D. La. 2010) *citing Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993), abrogated on other grounds by *Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994).  In the context of a medical care claim, deliberate indifference requires actual knowledge and conscious disregard of a serious medical need of  the plaintiff.  *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir.2002) citing *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970.

Deliberate indifference is an extremely high standard to meet.  *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind;  thus, the test is "subjective recklessness" as used in the criminal law.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *See also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).   "Mere negligence will not suffice, and deliberate indifference, i.e., the subjective intent to cause harm, cannot be inferred from a . . . failure to act reasonably. *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000) (internal quotations ands citations omitted). It is not enough to demonstrate that the defendant was negligent, rather it must be shown that the actions were so reckless as to amount to deliberate indifference. *Sibley*, 184 F.3d at 489.  Thus, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Benjamin,* 2010 WL 582735, at *4 *citing Thompson*, 245 F.3d at 459.  Further, deliberate indifference cannot be proven through cumulative group acts, but rather, "each defendant's subjective deliberate indifference, *vel non*, must be examined separately."  *Stewart*, 174 F.3d at 537.

Initially, the Court notes that Means has not alleged that Durel knew of, or that he had any actual knowledge of, Means' medical condition, such that it could plausibly be inferred that Durel acted consciously or deliberately in disregard.

This reason alone requires dismissal.  There is simply insufficient factual allegations for this Court to draw the reasonable inference that Durel could be liable for the alleged inadequate medical care, or for this Court to find that Means has plausibly established deliberate indifference, a required element for this legal claim.  *Harold H. Huggins Realty, Inc*., 634 F.3d at 796 *quoting Iqbal*, 129 S.Ct. at 1949; *Coleman*, 745 F.3d at 763-764 *citing Iqbal*, 129 S.Ct. at 1949 and *Twombly*, 550 U.S. at 557.

Moreover, Means admits in his Complaint that he was transported to the hospital for medical treatment following the accident.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  *Norton* 122 F.3d at 292;  *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992).

Further, although Means complains that he requested additional treatment in the form of prescription medications and additional diagnostic testing, as held by the district court with respect to plaintiff's claims against Neustrom, Means does not allege that any prescription medication was prescribed by the hospital physicians, nor does he allege that the hospital physicians recommended any additional diagnostic testing which was not already provided to him.  Moreover,

14

the Eighth Amendment requires only that inmates receive "adequate medical care."
*Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013).  Although Means
apparently wanted medication or additional diagnostic tests to be performed, while
desirable, such treatment is in no way constitutionally required.  The fact that the
medical care given is not the best that money can buy does not amount to
deliberate indifference.  *Mayweather*, 958 F.2d at 91.  The constitution does not
command that prison inmates be given the kind of medical attention that judges
would wish to have for themselves;  it prohibits only deliberate indifference to
serious medical needs.  *Mayweather*, 958 F.2d at 91; *Benjamin,* 2010 WL 582735,
at *5 *citing Ruiz v.  Estelle*, 679 F.2d 1115, 1149 (5th Cir. 1982), *amended in part
and vacated in part on other grounds*, 688 F.2d 266, 267 (5th Cir. 1982).

        While Means has apparently not been provided medication or had more in-
depth tests for his complaints, as he alleges should be done, the mere fact that
Means disagrees with what medical care is appropriate does not state a claim of
deliberate indifference to serious medical needs.  Mere disagreement with medical
diagnosis or treatment does not state a claim of deliberate indifference under the
Eighth Amendment. *Gobert v. Caldwell,* 463 F.3d 339, 347 (5th Cir. 2006);
*Stewart*, 174 F.3d at 535; *Norton*, 122 F.3d at 292; *Young v. Gray*, 560 F.2d 201,
201 (5th Cir. 1977) ( an "allegation that the doctor should have undertaken

additional diagnostic measures does not state an eighth amendment claim").
Indeed, the Supreme Court has expressly noted, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107; *Domino,* 239 F.3d at 756.  Thus, a "medical decision" concerning whether to order an X-ray, CAT scan, MRI, or similar diagnostic test, "does not represent cruel and unusual punishment." *James,* 2007 WL 3341728, at *7 *citing Estelle*, 429 U.S. at 107.

Likewise, incorrect diagnosis or unsuccessful treatment is insufficient to establish deliberate indifference sufficient to state a constitutional claim. *Johnson*, 759 F.2d at 1238-39; *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

At best, the complaint shows merely that the prison personnel may have acted negligently with regard to plaintiff's medical condition.  However, actions which are merely inept, erroneous or negligent do not satisfy the high standard of deliberate indifference.  *Doe v.  Dallas Independent School District*, 153 F.3d 211, 219 (5th Cir.  1998).  Negligence and even medical malpractice does not implicate the Eighth Amendment and does not provide a basis for a § 1983 claim. *Estelle*, 429 U.S. at 106;  *Stewart,* 174 F.3d at 534; *Gobert,* 463 F.3d at 346; *Varnado*, 920 F.2d at 321.  Even "gross negligence" does not establish deliberate indifference.

16

*Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004). Finally, complaints alleging negligence in diagnosis or treatment does not state a constitutional claim. *Stewart*, 174 F.3d at 534; *Varnado*, 920 F.2d at 321.

In sum, the factual allegations in Means' complaint, viewed in light of the above cited jurisprudence, do not "raise a right to relief above the speculative level. . ." and are insufficient to "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555; *Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013); *Twombley,* 127 S.Ct. at 1974; *Malik v. Continental Airlines, Inc.*, 305 Fed. Appx. 165, 167 (5th Cir. 2008); *Mitchell v. Johnson*, 2008 WL 3244283, *2 (5th Cir. 2008). Accordingly, as was the case with his inadequate medical claim against Neustrom, for the above reasons, Means' Eighth Amendment inadequate medical care claim against Durel will be dismissed, as Means has likewise failed to state a viable constitutional medical care claim against Durel.

**Eighth Amendment Unconstitutional Prison Conditions Claim**

Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *See Rhodes v.*

*Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Additionally, while  the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation.  *Harper,* 174 F.3d at 719. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal civilized measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir.1995); *Alexander v. Tippah County*, 351 F.3d 626, 630 (5th Cir.2003)*; Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement.  *Id.*  "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted) (emphasis added).  In the context of a prison conditions case, the state of mind to establish that an individual acted with deliberate indifference requires a showing that the defendant official  "(1) w[as] aware of facts from which an inference of excessive risk to the prisoner's health or safety could be

18

drawn and (2) that [he] actually drew an inference that such potential for harm existed." *Herman v. Holiday*, 238 F.3d 660, 664 (5ᵗʰ Cir. 2001) *quoting Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

Pretermitting a discussion as to whether Means has alleged a sufficiently serious deprivation resulting in the denial of "the minimal civilized measure of life's necessities", Means has not sufficiently alleged that Durel was deliberately indifferent to his plight, that Durel subjectively intended to cause harm to him or that Durel purposefully deprived him of his rights under the Eighth Amendment. *See Atkins v. Sheriff's Jail Avoyelles Parish*, 278 Fed. Appx. 438, 439 (9th Cir. 2008) (affirming dismissal of an inmate slip and fall claim alleging deliberate indifference when jail personnel failed to repair leaks that caused water puddles, which in turn caused the plaintiff to slip and fall); *Banks v. Winn Correctional Center*, 2009 WL 5440749, *1-2 (W.D. La. 2009) (dismissing an inmate slip and fall claim where the prison officials knew of a roof leak and had promised to fix it, but never did, thereby allowing water to pool on the floor in which the plaintiff slipped and fell).

Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the test is "subjective recklessness" as used in the criminal law. *Norton v. Dimazana*, 122

F.3d 286, 292 (5ᵗʰ Cir. 1997); *Farmer,* 114 S.Ct. at 1980. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5ᵗʰ Cir. 2003). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm"; negligence and even gross negligence does not implicate the Constitution and does not provide a basis for a § 1983 claim. *Thompson*, 245 F.3d at 459; *Farmer,* 114 S.Ct.  at 1978; *Sibley*, 184 F.3d at 489; *see also Doe v.  Dallas Independent School District*, 153 F.3d 211, 219 (5ᵗʰ Cir.  1998) (actions which are merely inept, erroneous or negligent do not satisfy the high standard of deliberate indifference.). Furthermore, deliberate indifference cannot be proven through cumulative group acts, but, rather, each defendant must independently be shown to have acted with subjective deliberate indifference.  *Stewart v. Murphy*, 174 F.3d 530, 537 (5ᵗʰ Cir. 1999).

In this case,  Means merely alleges in a conclusory fashion that Durel was deliberately indifferent without stating any facts to support that conclusion. Merely alleging such "buzz words" offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" which is insufficient for this Court to reasonably infer a right to relief above the speculative level.

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678; *Kopp*, 722 F.3d at 333;

*Coleman*, 745 F.3d at 763-764 *citing Iqbal*, 129 S.Ct. at 1949 and *Twombly,* 550

U.S. at 555.

For these reasons, Means has failed to state an Eighth Amendment

individual capacity claim for unconstitutional prison conditions against Durel

upon which relief may be granted.  However, given that the Court will grant

Means an opportunity to amend with respect to his corresponding official capacity

claim, although the Court is doubtful that Means will be able to state a viable

individual capacity unconstitutional prison conditions claim against Durel, at this

time, the Court will deny Durel's  motion to dismiss as to this claim.

## II.  Official Capacity Claims

Means has also sued Durel in his official capacity. An official capacity suit

is the equivalent of a suit against the entity of which the officer is an agent.

*Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469 U.S.

464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v.*

*Monroe County, Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1

(1997)[4] ; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999).  In this

---

[4]The Supreme Court in *McMillian* explained that:
> a suit against a governmental officer "in his official capacity" is the same
> as a suit " 'against [the] entity of which [the] officer is an agent,' "

case, Means has not sued the Lafayette City-Parish Consolidated Government. Nevertheless, the Court treats the claim against Durel as a claim against the governmental entity for which he served, the Lafayette City-Parish Consolidated Government.

Municipalities may be held liable under § 1983 for constitutional violations if: (1) there is a constitutional violation; (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) *citing Monell v. Dep't of Soc. Ser.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).   However, when there is no underlying individual constitutional violation for which the municipal defendant can be held derivatively liable on the basis of its policies or customs, there can be no liability against the municipality or its employees in their official capacities. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished);  *Lively v. Theriot,* 2015 WL 3952159,

---

*Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) *quoting  Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978) and that victory in such an "official-capacity" suit "imposes liability on the entity that [the officer] represents,"  *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

*McMillian,* 520 U.S. at 785 n. 2, 117 S.Ct. 1734.

*8 (W.D. La. 2015) *citing Breaux v. Brown,* 2006 WL 3760242, *2 (W.D. La. 2006), *Patin v. Richard*, 2011 WL 9118, *8 (W.D. La. 2011) *citing Ashford v. City of Lafayette*, 2008 WL 5157900, *11 (W.D. La.2008) and *Vicknair v. Louisiana Dept. of Wildlife and Fisheries*, 2013 WL 1180834, *18–19 (W.D. La.2013); *See also DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 202 at fn. 10, 109 S.Ct. 988, 1007 at fn. 10 (1989) (concluding that because there was no constitutional violation, there was no need to consider whether the allegations in the complaint were sufficient to support a § 1983 claim against the municipal defendant under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

In this case, for the reasons set forth above and those previously stated by the district court with respect to plaintiff's claims against Neustrom, Means has failed to set forth a viable Eighth Amendment inadequate medical care claim against either Neustrom of Durel in their individual capacities.  Accordingly, Means' official capacity inadequate medical care claim, whether asserted against Durel in his official capacity as the former Lafayette City-Parish Consolidated Government President or the unnamed Lafayette City-Parish Consolidated Government must by dismissed.

Furthermore, even if this was not the case, the majority of Means'

allegations are related to the management of the LPCC, for which neither Durel

nor the Lafayette City-Parish Consolidated Government is responsible. To the

contrary, Sheriffs in Louisiana are final policy makers with respect to management

of the Parish jail, this includes the obligation to provide medical care for the

prisoners, and the oversight and control over the employees (including deputies[5])

of the jail, as well as the daily function and operation of the jail.   *Jones v. St.*

*Tammany Parish Jail,* 4 F.Supp.2d 606, 613 (E.D. La. 1998) *citing* La. Const. art.

5 § 27, La. R.S. 15:704, *O'Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir.1985)

*quoting Amiss v. Dumas*, 411 So.2d 1137, 1141 (La. App. 1st Cir.), *writ denied*,

415 So.2d 940 (La.1982); *Davis v. Lafourche Parish Sheriff's Office*, 2012 WL

5866201, *4 (E.D. La. 2010). Under this scheme, the Sheriff's policy-making and

day-to-day decisions regarding the management of the jail, cannot be imputed to

the Parish.  *Jones,* 4 F.Supp.2d at 613. Accordingly, Means has not set forth a

viable claim against Durel or the Lafayette City-Parish Consolidated government

regarding the operation and management of the LPCC, including the alleged

inadequate provision of medical care, as well as the alleged under and inadequate

staffing of the facility.  Further, given this jurisprudence, no amendment of the

---

[5]Deputies are employees of the Sheriff. *See Jenkins v. Jefferson Parish Sheriff's Office*, 402
So.2d 669, 670 (La.1981)

24

complaint could cure the deficiencies in Means' allegations as it is clear that the obligation to provide medical care for the prisoners lies with the Sheriff, not Durel or the  Lafayette City-Parish Consolidated Government. Accordingly, Means' Eighth Amendment official capacity inadequate medical care claim will be dismissed.

Apparently cognizant of this jurisprudence, Means attempts to recast his claims against Durel and the Lafayette City-Parish Government as based on its obligation to fund the LPCC.  *See* La. R.S. 33:4715 ("The police jury of each parish shall provide . . . a good and sufficient jail. . . ."); La. R.S. 15:702 ("The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."); *Jones*, 4 F.Supp.2d at 613 ("The Parish's responsibility to the jail is limited to the funding of the jail.").  However, the complaint is devoid of any allegations whatsoever that the LPCC was underfunded in any way, and more specifically, no allegations that there was any lack of funding for jail maintenance.  There are likewise absolutely no allegations that any official municipal policy, custom or procedure of inadequate funding or under-funding of the LPCC was the cause, moving or operational force behind any potentially viable constitutional claim, that is, there are no allegations in the complaint that Means' slip and fall was caused by a lack of funding.  As such,

25

Means has failed to "raise a right to relief above the speculative level. . . ." and has failed to allege facts sufficient to "nudge[] [his] claims across the line from conceivable to plausible . . . . "  *Twombley,* 550 U.S. at 555, 127 S.Ct. at 1974; *Kopp*, 722 F.3d at 333; *Malik*, 305 Fed. Appx. at 167; *Mitchell*, 2008 WL 3244283, at *2.  To the contrary, Means' pleading "merely creates a suspicion [of] a legally cognizable right of action", which under the applicable standard is insufficient.  *Twombley,* 127 S.Ct. at 1965 *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004); *Lormand*, 565 F.3d at 257 at fn. 27. In short, Means has not set forth a claim for relief which is plausible on its face.

The Court is cognizant, however, that prior to dismissal of Means' claims against Neustrom, the district court denied Means an opportunity to amend his complaint.  By opposition herein, Means again requests an opportunity to amend his complaint.

When a plaintiff's complaint fails to state a claim, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner which will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,

313 F.3d 305, 329 (5th Cir. 2002); *See also Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986) (noting that "[a] complaint sought to be dismissed under Rule 12(b)(6) may generally be amended to cure its deficiencies.").

Given the Lafayette City-Parish Government's responsibility for the physical maintenance of the jail, and Means' allegation in paragraph 8, that Durel "knew or should have known of failing plumbing in the deteriorating building", the Court finds that the factual deficiencies in Means' complaint with regard to his Eighth Amendment unconstitutional prison condition claim may not be incurable. Accordingly, the motion to dismiss this claim will be denied, and leave to amend the complaint with respect to this claim will be granted.

### III. Punitive Damages

The Supreme Court has held unequivocally that "[a] municipality is immune from liability for punitive damages in a § 1983 action." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981).  The Supreme Court has also held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 161 (1985). Thus, a plaintiff is barred from recovering punitive damages against an official

acting in his official capacity.  *Id.*  Accordingly, Means  cannot recover punitive damages under federal law against Durel in his official capacity, and the defendants' motion will be granted in that respect.

The Supreme Court has recognized, however, that punitive damages are recoverable under federal law against municipal employees when sued in their individual capacities.  *See Smith v. Wade*, 461 U.S. 30, 35 (1983). At this time, Means has not stated an individual capacity prison condition claim against Durel. In the event that Means is able to state an individual capacity claim against Durel by amendment, his right to request reconsideration of this ruling is reserved.

To the extent that Means seeks an award of punitive damages on his claims asserted under Louisiana state law, Durel's Motion to Dismiss should likewise be granted. It is well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided for by statute. In the absence of such a specific statutory provision, only compensatory damages may be recovered. *See International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La.1988). Nowhere in the pleadings, nor in opposition to the instant Motion does Means identify a statutory provision which would allow recovery of punitive damages for the state law claims that he asserts herein, nor is the Court aware of any such provision.  Accordingly, the Court will dismiss Means' punitive damage claims

under both federal and state law.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss is **granted in part and denied in part.**  Plaintiff's federal Eighth Amendment inadequate medical care claim against Durel and his claims for punitive damages under both federal and state law are **dismissed with prejudice**.  Plaintiff will be granted until March 18, 2016 to file an Amended Complaint setting forth additional facts in support of his federal Eighth Amendment unconstitutional prison condition claim against Durel. The trial set for April 18, 2016 will be continued without date.

Signed this 4th day of February, 2016, at Lafayette, Louisiana.

_____

**PATRICK J. HANNA**
**UNITED STATES MAGISTRATE JUDGE**